[No. 2,615.]

## ELIJAH TRUE v. SIMPSON THOMPSON, WILLIAM G. MORRIS, AND ROBERT SHEEHY.

SCHOOL OR LIEU LANDS—CERTIFICATE OF LOCATION WILL NOT SUPPORT EJECTMENT.—A certificate of location of school or lieu land, issued under the Act of April 27th, 1863 (Stats. 1863, p. 591), is not evidence of legal title, and will not support ejectment.

VIRTUAL REPEAL OF OLD LAND LAW BY ADOPTION OF NEW SYSTEM.— The Act of April 13th, 1859 (Stats. 1859, p. 227), in so far as it made a certificate of location of school or lieu lands prima facie evidence of title, was superseded and repealed by the Act of April 27th, 1863 (Stats. 1863,

p. 591), which inaugurated a new system of land law, intended to be complete in itself.

CERTIFICATE OF PURCHASE AS EVIDENCE OF TITLE.—Under the Act of April 27th, 1863, for the sale of certain lands belonging to the State (Stats. 1863, p. 591), the Register's certificate of purchase of school or lieu land is the only prima facie evidence of legal title prior to a patent.

APPEAL from the District Court of the Seventh Judicial District, Napa County.

The Court below, on the trial of this action, found that the title of the land involved passed from the United States, by virtue of a patent dated May 20th, 1867, to the defendant Thompson and his associates, and that they were the legal owners thereof; that the Act of Congress of March 3d, 1863, granting the right of preëmption to certain purchasers on the Suscol Ranch took from the State of California all power, right, or authority to sell or dispose of the said land; and that the defendants were entitled to judgment against the plaintiff. Such a judgment having been entered, and a motion for new trial overruled, plaintiff appealed.

*M. A. Wheaton* and *George Cadwalader*, for Appellant.

The land sued for is a part of a thirty-sixth section, which was granted to the State on March 3d, 1853, just ten years before the Suscol Act was passed. The plaintiff purchased the State title, and paid for it in full, and applied for a patent, when defendants filed a protest, and caused the case to be certified into the Court below for trial, at the same time offering and applying to purchase from the State, if the State owned the land. It is plain that the defendants have managed to keep one step behind the title in their efforts to get it. While it was in the State they went to the United States for it; and after the State has sold it to us, and got our money for it, they try to buy from the State. Unless the defendants can made us their trustees, they cannot reach the title of the land. We have the legal title;

we got it strictly according to law, and we have a right to its possession.

The statutes have declared, and the Courts have often decided, that certificates of location are evidence of title. (See *Richter* v. *Riley*, 22 Cal. 641.)

*Pendegast & Stoney*, for Respondents.

Plaintiff's certificate of location was no evidence of title. The Act of April 27th, 1863, under which the certificate issued, denies by implication any weight as evidence to certificates of location. It provides that certificates of purchase shall be prima facie evidence of legal title; and as the certificate of location precedes the certificate of purchase in the proceedings to acquire title, and is a lower link in the chain, this provision of the statute excludes the idea that it is to have the same force as evidence upon the principle of the maxim, *expressum facit cessare tacitum.*

Nor does payment of the purchase money to the Treasurer give the certificate of location the dignity of a certificate of purchase. The law attaches no importance as evidence to the receipt of the Treasurer. Payment is one of the steps toward the certificate of purchase; but to avail the applicant in proving title to the land it must have been followed by "the certificate of purchase issued by the Register." (Act of 1863, Sec. 17.)

The plaintiff does not claim under the United States, because he refused to purchase under the Suscol Act. His claim is only under the State, and he can assert no better right than she had. But at the date of the survey the land was all occupied and cultivated, and, consequently, the title to it did not vest in the State, and no title passed to plaintiff.

By the Court, CROCKETT, J.:

The quarter section of land in contest in this case is a portion of a thirty-sixth section, and is included in the general tract known as the "Suscol Ranch." The action is ejectment, and as proof of title the plaintiff relies upon a certificate of *location* issued under the Act of April 26th, 1863, entitled "An Act to provide for the sale of certain lands belonging to the State." (Stats. 1863, p. 591.) The statute requires an applicant desiring to purchase from the State, lands included in sixteenth or thirty-sixth sections, to make his application to the State Locating Agent for the proper district, and if the application is approved, it is made the duty of the agent to apply to the Register of the proper United States Land District for the land on behalf of the State, for the use of the applicant. If the Register approves the selection by the State, the Locating Agent is to forward the papers to the State Surveyor General, and if he approves the location and selection, it is the duty of the applicant, within a specified time thereafter, to pay a certain percentage of the purchase money, or, if he sees fit, he may then pay the whole purchase price to the County Treasurer; and when the whole is paid, it is made the duty of the Register of the State Land Office to issue to the applicant a certificate of *purchase.* Section seventeen of the Act provides that "when a certificate of purchase has been issued by the Register, the same shall be deemed prima facie evidence of legal title to the land for which the certificate of purchase is issued;" and the same section provides that the certificate, all rights acquired thereby, "shall be subject to sale and transfer by deed or assignment executed and acknowledged before any officer authorized by law to take acknowledgments of deeds," etc. The certificate put in evidence by the plaintiff was not the certificate of *purchase* referred to in this section, but the certificate of *location,* issued

by the State Locating Agent, approved by the United States Register and the State Surveyor General. Having elected to pay the whole of the purchase price in one payment, and to waive the credit allowed by law for a portion thereof, the plaintiff also put in evidence a receipt from the County Treasurer for the whole purchase money. His title, therefore, consists of the certificate of *location* and a proper receipt for the whole of the purchase money. The defendants deny that these will support ejectment; and if this proposition can be maintained, the plaintiff must fail in his action. The plaintiff, however, insists that under an Act passed in 1859 ejectment will lie on a certificate of *location*, such as he has produced in this case. That Act contains but one section, and is in the following words: "The certificate of purchase or of location of any lands in this State, issued or made in pursuance of any of the laws of the United States or of this State, shall be deemed prima facie evidence of legal title in the holder of said certificate of purchase or location, or his assignees." (Stats. 1859, p. 227.) If this Act remained in force, wholly unaffected by the Act of April 27th, 1863, there could be no question of the sufficiency of the plaintiff's certificate to support the action. But by the Act of 1863 the Legislature made many important changes and modifications in the mode of disposing of the lands belonging to the State. It, in fact, inaugurated a new system, which was intended to be complete in itself. It provided new agents, who were to receive and pass upon applications to purchase, and established a State Land Office, to be presided over by a Register, to whom important duties are confided. He is in some measure to review the proceedings of subordinate officers, and he alone is authorized to issue a certificate of purchase, the effect of which, as declared by the seventeenth section, shall be to vest in the holder of it,

or his assigns, a prima facie title. The Act contains no similar provision in respect to certificates of location, and in adopting a new system whereby a new and superior officer was to perform the last act prior to the issuing of the patent, provided he found all the previous proceedings to be regular, it is clear that the Legislature intended *his* certificate to be the only prima facie evidence of legal title prior to the patent. To this extent the Act of 1863 repealed the Act of 1859, so far as it relates to sales of land included in sixteenth and thirty-sixth sections, or lands taken in lieu thereof. Whether the same proposition would hold good in respect to all other classes of lands enumerated in the Act of 1863, need not now be decided, as the question is not before us; and we, therefore, express no opinion upon it.

The plaintiff having failed to produce any evidence of legal title, cannot maintain his action.

Judgment affirmed.

Mr. Justice SPRAGUE did not participate in the foregoing decision.